West Penn Power Company, Petitioner *v.* Howard Cohen, Secretary, Pennsylvania Department of Revenue, Respondent.

Argued December 15, 1981, before President Judge CRUMLISH, JR. and Judges MENCER, ROGERS, WILLIAMS, JR. and CRAIG.

R. Scott Shearer, with him Howell C. Mette, Shearer, Mette & Woodside, for petitioner.

Vincent J. Dopko, Deputy Attorney General, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., April 22, 1982:

This matter comes within the original jurisdiction of our Court. West Penn Power Company filed a complaint in mandamus to compel the Secretary of Revenue to make settlement of tax returns filed under the Public Utility Realty Tax Act [1] (PURTA) for the years 1969 through 1973. Additionally, petitioner has requested a declaratory judgment from this Court as to the duties and responsibilities of the Secretary of Revenue as applied to the administration of PURTA under the provisions of the Fiscal Code (Code).[2]

In 1976 the Secretary of Revenue requested an Attorney General's opinion concerning the applicability of §§1001 and 1002[3] of the Code as applied to the administration of PURTA. Prior to this request, the

[1] Act of March 10, 1970, P.L. 168, as amended, 72 P.S. §3271, repealed and replaced by Act of July 4, 1979, P.L. 60, 72 P.S. §8101-A.

[2] Act of April 9, 1929, P.L. 343, as amended, 72 P.S. §1.

[3] 72 P.S. §§1001, 1002.

Department of Revenue (DOR) had never formally settled any PURTA return. Because there was never any formal settlement, the taxpaying utilities were foreclosed from filing Petitions for Resettlement and were relegated to contesting overpayments under the refund provisions of the Code.[4]

The Attorney General's opinion[5] stated:

We have carefully reviewed the Fiscal Code, and find no other provision which would be applicable to the collection of taxes under PURTA. Accordingly, it is our opinion, and you are hereby advised that Section 1001 of the Fiscal Code is applicable to PURTA, and imposes a duty on the Department of Revenue to settle such tax subject to the Department of the Auditor General's audit and approval, pursuant to the procedure set forth in Section 802 of the Code. Subsequent to the settlement, the provisions of Sec-

---

[4] 72 P.S. §503(a) (4) reads in pertinent part:

The Board of Finance and Revenue shall have the power, and its duty shall be,

(a) Except as hereinafter provided with respect to the Department of Transportation, to hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonuses or other moneys paid to the Commonwealth.

. . .

. . . .

(4) When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous. In such case, the petition to the board may be filed either prior or subsequent to such final judgment but must be filed within five years of the payment of which a refund is requested, or within five years of the settlement of such taxes, bonus or other moneys due the Commonwealth, whichever period last expires. . . .

[5] Opinion of the Attorney General No. 77-5, March 17, 1977.

tion 1401 of the Fiscal Code become applicable as in the case of all other tax settlements.

After this opinion was issued, the Secretary of Revenue began *prospectively* settling[6] all PURTA returns. West Penn then filed for refunds dating back to the taxable 1969 year. Refunds were granted back to the taxable 1974 year, due to a Supreme Court holding in *Commonwealth v. Philadelphia Electric Co.*, 472 Pa. 530, 372 A.2d 815 (1977), which exempted certain property as taxable realty under PURTA. DOR refused to issue refunds for the taxable years 1969 through 1973 because the five-year statute of limitations for the filing of a refund petition had passed.[7]

After the instigation of this suit, the DOR requested a clarifying opinion from the Attorney General[8] as to whether the DOR need settle *all* PURTA claims or only those claims wherein the DOR intends to use the collection procedures of the Code. The Department of Justice responded with a clarifying "letter"[9] which held that the DOR need not "routinely" settle PURTA returns, but must settle returns

---

[6] The term "settle" is used in this context to mean an administrative determination of any amount owed by the taxpayer. *See Commonwealth v. Erdenheim Farms Co.*, 55 Dauph. 17 (1944).

[7] *See* note 4 *supra.*

[8] A response to this request was made on August 6, 1980 by Donald J. Murphy, Chief of Commercial, Financial and Governmental Services Division, Department of Justice. West Penn asserts that this letter is not an official Attorney General's opinion because it was not written by the Attorney General. We will not address this contention, and its effect on this litigation, in that we have determined that mandamus does not lie, and thus the issue of whether or not the first opinion only was binding on DOR need not be discussed.

[9] The letter from the Department of Justice found that

The PURTA tax is self-assessed, and acceptance of the self-assessment by the Department of Revenue is a final ascertainment of the amount due and payable . . . (Citations omitted.) Only in the situation where the Department of Revenue is unwilling to accept the PURTA taxpayer's self-

as a prerequisite to the use of the collection provisions of the Code.

Based on the first opinion of the Attorney General, West Penn has requested mandamus, asserting that this opinion created a mandatory duty in DOR to settle these returns.

> [W]e note that mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other adequate remedy. Mandamus will only be granted when the plaintiff's right to relief is clear and convincing and not where the defendant merely exercises discretion unless the action is so arbitrary as to be no actual exercise of discretion at all. (Citations omitted.)

*Wyoming Sand and Stone Co. v. Department of Revenue,* 24 Pa. Commonwealth Ct. 366, 369, 355 A.2d 860, 862 (1976).

Thus, in deciding whether West Penn is entitled to the extraordinary writ of mandamus, we must first determine whether it has a clear legal right to relief. Because we hereinafter hold, as a matter of law, that the provisions of the Code do not require that all PURTA returns need be routinely settled, West Penn's request for mandamus is denied.

West Penn has also requested that this Court issue a declaratory judgment as to whether or not the Department of Revenue is under a duty to settle *all* PURTA returns, or only those returns where it intends to use the collection provisions of the Fiscal Code.

---

assessment is the Department required, with the Auditor General, to make a settlement under section 1001 of the Fiscal Code, as a prerequisite to the enforcement of payment under Fiscal Code section 1401 . . . (Citations omitted.)

"The stated purpose of the Declaratory Judgments Act, 42 Pa. C. S. §7531 *et seq.* is to settle and afford relief to any person from uncertainty and insecurity with respect to right, status and legal relations affected by a statute." *Snider v. Shapp,* 45 Pa. Commonwealth Ct. 337, 405 A.2d 602 (1979). Because the application of the Code to PURTA is unclear, we will grant West Penn's request for declaratory judgment.

Section 8102-A of PURTA provides for the imposition of the tax:

(a) On or before the first day of June of 1970 and of each year thereafter, every public utility shall pay to the State Treasurer, through the Department of Revenue, a tax at the rate of thirty mills upon each dollar of the state taxable value of its utility realty at the end of the preceding calendar year.

(b) Each such payment shall be accompanied by a report, upon oath of the owner or responsible officer of the public utility, showing the amount and manner of computation of the State taxable value upon which such payment is based.

(c) Payment of the tax hereby imposed *may be enforced by any means provided by law* for the enforcement of payment of taxes to the State. . . . (Emphasis added.)

The above provisions indicate an intent by the legislature to make PURTA returns self-assessing. "The legislative authority to prescribe methods for the assessment and collection of taxes is plenary and paramount." *Commonwealth v. Southern Pennsylvania Bus Co.,* 339 Pa. 521, 529, 15 A.2d 375, 380 (1940).

West Penn urges us to construe Section 1001 of the Code as requiring the DOR to settle *all* PURTA returns, rather than merely accept the utilities' own

assessments. The Attorney General's opinion construed this section to contain such a requirement. West Penn asserts that this was the correct construction and that the opinion created a mandatory duty in DOR to settle *all outstanding and future* PURTA returns. We disagree.

Provisions dealing with the imposition of taxes must be strictly construed.[10] Section 1001 recites in pertinent part:

> In all cases in which any person, association, corporation, public officer, or other party, *is indebted, or is believed to be indebted, to the Commonwealth, and no other method for the collection of such debt is provided by law,* it shall be the duty of the Department of Revenue to state and settle an account with the debtor, and transmit the original settlement, with the papers appertaining thereto, to the Auditor General for audit and approval, as in the case of tax settlements, and the subsequent procedure shall be the same as in the case of tax settlements. (Emphasis added.)

Clearly, this Section contains *two* prerequisites to the requirement that DOR makes a settlement: 1) that the party be indebted, or believed to be indebted, to the Commonwealth and 2) that there be no other method for collection of the debt.

A strict reading of this provision reveals that this Section is inapplicable to PURTA returns. In the instant case, West Penn is not *indebted* to the Commonwealth and the need for collection has been obviated by the requirements of PURTA itself, *i.e.,* the public utility is required to assess and forward payments itself.

In the event that a utility fails to make a return or if the DOR determines there has been an underpay-

---

[10] Statutory Construction Act of 1972, 1 Pa. C. S. §1928(b)(3).

ment, then the enforcement provisions of the Code may be utilized, Section 8102-A.(c). We have previously determined that these enforcement provisions are indeed applicable to PURTA returns. *See Heller v. Depuy*, 2 Pa. Commonwealth Ct. 196, 277 A.2d 849 (1971).[11]

Section 1401 of the Code provides:

All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus, penalties, and all public accounts *settled, assessed or determined* against any corporation, association, or person, including interest thereupon, shall be a first lien upon the franchises and property.... (Emphasis added.)

The first Attorney General's opinion held that "Section 1401 provides for the creation of a lien only after a settlement, assessment or determination of the tax has been made." The opinion further concluded that the informal procedures which had been utilized by the DOR did not constitute a "settlement, assessment or determination" within the meaning of Section 1401. We agree and hold that, in order to utilize this section, a formal determination must be made in accord with Section 801 of the Code.[12]

---

[11] In *Heller*, the plaintiffs argued that PURTA was constitutionally defective for failure to provide a method of enforcement. We stated:

Even if this Court would have written the legislation in a different way, so long as the statute provides a method for collection and enforcement, it must be upheld. In Section 3 of Act No. 66, in subsection (c) we find 'Payment of the tax hereby imposed may be enforced by any means provided by law for the enforcement of payment of taxes to the state....' We read this to mean that all those provisions of the Fiscal Code could be utilized by the Department of Revenue to enforce payment of this tax.

*Heller* at 217, 277 A.2d at 861.

[12] 72 P.S. §801.

However, we are also in agreement with the clarifying letter from the Justice Department that PURTA returns need not be routinely settled. If a utility feels that it has overstated or overpaid its liability, then it may make use of the refund provisions of the Code.[13] To hold otherwise would be to impose conditions and procedures which the legislature, in its "paramount" function, *Southern Pennsylvania Bus Co.*, has not determined to be necessary.

West Penn's petition is dismissed.[14]

### ORDER

West Penn Power Company's request for mandamus is denied. The request for declaratory judgment is granted and we declare that, as a matter of law, Public Utility Realty Tax returns need not be routinely settled under the provisions of the Fiscal Code, however, if the Department of Revenue intends to use the collection provisions of the Code, then it must settle the return in question.

This decision was reached prior to the resignation of Judge MENCER.

Judge PALLADINO did not participate in the decision in this case.

---

[13] *See* note 4 supra. In this case, it would appear that West Penn's request to this Court to declare that DOR must settle *all* PURTA claims would allow them under the provisions of 72 P.S. §503(a)(4) to timely file refunds. This section allows for the filing of returns within five years of the date of payment or date of *settlement* whichever is later. West Penn waited until some time after the litigation in *Commonwealth v. Philadelphia Electric Co.* was concluded, and thus was barred by the five-year statute of limitations.

[14] West Penn's request for attorney's fees and costs are not appropriate in this case given our determination that the DOR was under no duty to settle all PURTA returns.